# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>JAMES WILLIAM LULL,<br><br>Debtor. | Case No. 06-00898<br>Chapter 7 |
| RONALD K. KOTOSHIRODO,<br>CHAPTER 7 TRUSTEE,<br><br>Plaintiff,<br><br>vs.<br><br>DORLAND AND ASSOCIATES, INC.<br>CPAs, a Hawaii corporation; DONALD<br>TIPALDI; TOWER CREEK, LLC, a<br>Hawaii limited liability company,<br><br>Defendants. | Adv. Pro. No. 08-90001<br><br>Re: Docket No. 25 |

## MEMORANDUM OPINION CONCERNING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.    INTRODUCTION

This is an adversary proceeding in bankruptcy.  Fed. R. Bankr. P.

7001.  This court has jurisdiction.  28 U.S.C. § 1334(b).  The parties agree that this

is a core proceeding in bankruptcy. 28 U.S.C. § 157 (b)(2)(F). The complaint

seeks to avoid and recover alleged preferential and unauthorized post-petition

transfers. 11 U.S.C. §§ 547(b), 549 and 550.[1] Plaintiff is Ronald K. Kotoshirodo

("Plaintiff" or "Trustee"), the trustee in bankruptcy in the underlying chapter 7

liquidating bankruptcy case of James W. Lull ("Debtor" or "Lull"). Defendant

Donald Tipaldi ("Defendant" or "Tipaldi"), an unsecured creditor of Lull, is the

only defendant who is a party to this motion.

## II.    PROCEDURE

Plaintiff moves for partial summary judgment against Tipaldi. Fed.

R. Civ. P. 56; Fed. R. Bankr. P. 7056. The motion alleges that Tipaldi received an

avoidable preferential transfer of property of Lull with a value of $298,136.34, and

seeks recovery of that sum.[2]

The motion was heard and submitted on July 29, 2008. Michael A.

Lilly, Esq., of Ning, Lilly & Jones appeared for Plaintiff. Marshall D. Chinen,

Esq., appeared for Tipaldi.

_____

[1] Unless otherwise noted, all chapter, section, and rule references are to the Bankruptcy
Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] Tipaldi did not file a statement in opposition to Plaintiff's Concise Statement of
Material Facts and is deemed to have accepted the facts set forth in Plaintiff's statement. Local
Rule 56.1(g), United States District Court, District of Hawaii, made applicable to bankruptcy
adversary proceedings by Local Bankruptcy Rule 7001-(a)(19), United States Bankruptcy Court,
District of Hawaii.

U.S. Bankruptcy Court - Hawaii    #08-90001    Dkt # 59    Filed 08/22/08    Page 2 of 26

## III. FACTS

On August 1, 2005, Lull, Tipaldi, and Jimmy Jasper II ("Jasper")
formed Tower Creek, LLC ("Tower Creek"), a Hawaii limited liability company.
The articles of organization filed with the State of Hawaii Department of
Commerce and Consumer Affairs ("DCCA") identified Lull, Tipaldi and Jasper as
the members and managers of Tower Creek, and Tipaldi as the company's agent.

In September 2005, Tower Creek acquired three parcels of real
property in Guadalupe County, New Mexico, from New Mexico Land & Ranches,
Inc., a New Mexico corporation. The purchase price was $312,000.

The source of the funds for the purchase price is alleged by Plaintiff
to be money belonging to Lull. Tipaldi claims that the money was his.[3] It is
undisputed that, on September 20, 2005, Lull made a wire transfer of $298,136.34
to the title company handling the transfer of the New Mexico real property.

In August 2006, Tipaldi submitted Tower Creek's annual report, as of
July 1, 2006, to the DCCA. The department received the report on August 21,
2006, but returned it to Tipaldi for reasons not apparent from the record. The

---

[3] Plaintiff alleges, with supporting declaration and exhibits, that Tipaldi has taken 3
inconsistent positions about the funds in question. (See Plaintiff's Reply Memorandum, Dkt.
#33, pages 3-5; Declaration of Michael A. Lilly, Dkt. # 33, Exhibits L, M, N, O, and P. and
Supplemental Declaration of Michael A. Lilly, Dkt. #35, Exhibit Q.)

U.S. Bankruptcy Court - Hawaii   #08-90001   Dkt # 59   Filed 08/22/08   Page 3 of 26

department received a re-submitted annual report on October 17, 2006. On the report, signed by Tipaldi, there is a handwritten line through Lull's name in the list of member-managers, along with a handwritten notation, "Remove James Lull". Thereafter, Lull had no interest in Tower Creek.

Lull filed a voluntary chapter 7 petition on December 8, 2006, listing assets of $6.6 million and liabilities in the tens of millions of dollars to dozens of individuals who lent money for purported real estate bridge loans and other transactions. Lull did not list any interest in Tower Creek or the New Mexico parcels in his bankruptcy schedules and statements. Title to the parcels remains in the name of Tower Creek.

Tipaldi has asserted an unsecured claim of $2,750,000 in Lull's bankruptcy case.

## IV. ISSUES TO BE DECIDED

Plaintiff must satisfy all of the elements of an avoidable preferential transfer, as set forth in 11 U.S.C. § 547(b). In the present motion, the contested elements are: First, was the removal of Lull from Tower Creek a transfer of property of Lull to Tipaldi? (§ 547(b)). Second, if there was a transfer, did it occur within 90 days of the filing of Lull's bankruptcy petition? (§ 547(b)(4)(A)). Third, if the transfer did not occur within 90 days of Lull's petition, is the

-4-

preference reach-back period extended from 90 day to 1 year, because Tipaldi was an "insider" of Lull? (11 U.S.C. §§ 101(31), 547(b)(4)(B)). Fourth, if Plaintiff has demonstrated that there was an avoidable preferential transfer of Tipaldi, has Plaintiff proved what or how much can be recovered from Tipaldi? (11 U.S.C. § 550).

## V. RULINGS ON MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. In a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. State Farm Fire & Cas. Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989). Facts, however, "must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, --- U.S. --- , 127 S.Ct. 1769, 1776 (2007).

If the party seeking summary judgment carries its initial burden under Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 474 U.S. 574, 586 (1986). The nonmoving party must "set

U.S. Bankruptcy Court - Hawaii   #08-90001   Dkt # 59   Filed 08/22/08   Page 5 of 26

out specific facts showing a genuine issue for trial" and must do so "by affidavits or as otherwise provided in this rule" and not by relying merely on allegations or denials in its own pleadings. Fed. Rule Civ. P. 56(e)(2). "A mere scintilla of evidence supporting [a nonmovant's] position is insufficient to withstand summary judgment." Wood v. Stratos Prod. Dev., LLC (In re Ahaza Sys., Inc.), 482 F.3d 1118, 1128 (9th Cir. 2007)(quoting Galen v. County of L.A., 468 F.3d 563, 568 (9th Cir. 2006)).

## VI.   DISCUSSION

### A. Preferential Transfers

Section 547(b) provides that the trustee may avoid a transfer of an interest of the debtor in property:

(1)  to or for the benefit of a creditor;

(2)  for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3)  made while the debtor was insolvent;

(4)  made —

(A)  on or within 90 days before the date of the filing of the petition; or

(B)  between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

-6-

(5) that enables such creditor to receive more than such creditor would receive if —

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The party seeking to establish a preference has the burden of proving all five elements of § 547(b). Pioneer Liquidating Corp. v. San Diego Trust & Savs. Bank (In re Consol. Pioneer Mortgage Entities), 211 B.R. 704, 709 (S.D. Cal. 1997), aff'd in part, rev'd in part on other grounds, 166 F.3d 342 (9th Cir. 1999).

Tipaldi argues that the Trustee cannot meet his burden under § 547(b) because Lull had not contributed anything of value to Tower Creek, and thus no "transfer" occurred as a result of Lull's removal. Tipaldi also argues that Lull's removal occurred outside the 90-day preference period of § 547(b)(4)(A), and that the one-year reachback of § 547(4)(B) does not apply because Tipaldi is not an "insider" of Lull.

U.S. Bankruptcy Court - Hawaii  #08-90001  Dkt # 59  Filed 08/22/08  Page 7 of 26

1. <u>Transfer of Property of the Debtor  § 547(b)</u>

The definition of "transfer" in § 547(b) "is as broad as possible."  5 <u>Collier on Bankruptcy</u> ¶ 547.03[1] (15th ed. rev. 2008), at 547-15 (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 27 (1978)).  The term encompasses "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property." § 101(54)(D).  "Because the definition of 'transfer' is comprehensive, every conceivable type of transfer may be avoided if the other requirements of section 547(b) are met." <u>Collier</u>, <u>supra</u>, at 547-16.

Whether a transferred interest is "an interest of the debtor in property" under § 547(b) depends upon whether such interest "would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." <u>Begier v. I.R.S.</u>, 496 U.S. 53, 58 (1990)(interpreting the pre-1984 version of § 547(b) that referred to "property of the debtor" rather than "an interest of the debtor in property").  Thus, 11 U.S.C. § 541, which delineates the scope of property of the estate, guides analysis of whether a transferred interest is subject to § 547(b).  <u>Id.</u> at 58-59.

Under Hawaii's Uniform Limited Liability Company Act, Haw. Rev. Stat. ch. 428, a member of a limited liability company has no transferable interest

-8-

in the company's property, Haw. Rev. Stat. § 428-501, and a member is automatically dissociated from the company if the member becomes a debtor in bankruptcy, Haw. Rev. Stat. § 428-601(6)(A). Nevertheless, such provisions cannot operate to prevent a debtor's membership interest in a limited liability company from becoming "property of the estate" under Bankruptcy Code section 541. See Matter of Daugherty Const., Inc., 188 B.R. 607, 611 (Bankr. D. Neb. 1995). Section 541(c)(1)(A) and (B) provide that an interest of the debtor in property becomes property of the estate under § 541(a)(1), (2) and (5), notwithstanding contractual or state law restrictions on transfer.

Members in a member-managed LLC have "equal rights in the management and conduct of the company's business[,]" Haw. Rev. Stat. § 428-303(a)(1), and distributions made by the LLC must be in equal shares, Haw. Rev. Stat. § 428-405(a), unless otherwise provided in an operating agreement, Haw. Rev. Stat. § 428-103(a).

Tipaldi argues that Lull's removal from Tower Creek did not effect a transfer of any interest of Lull in property because Lull had failed to make promised contributions to the LLC and, as a result, had forfeited his membership interest in the company. According to Tipaldi, Lull had agreed to convey real property located in Tower Creek, Idaho, and sums he owed to Jasper to the LLC,

U.S. Bankruptcy Court - Hawaii   #08-90001   Dkt # 59   Filed 08/22/08   Page 9 of 26

but he never did so.  Thus, Tipaldi argues, Lull essentially had an executory

contract to become part of Tower Creek upon his conveyance of the Idaho

property to the LLC, and Lull's failure to convey the property enabled the other

members to remove him without breaching their membership agreement.

Tipaldi also contends that his – and not Lull's – funds were used to

purchase the New Mexico property for Tower Creek.

In support of his opposition to the motion, Tipaldi offers two

declarations of his own and one of Jasper.  Tipaldi's first declaration states that he

asked Lull in the fall of 2005 to forward $298,136.34 from the proceeds of the sale

of Tipaldi's real property on the Island of Kauai to an escrow company to enable

Tower Creek to purchase the New Mexico property.  In a supplemental declaration

filed after the trustee produced evidence of Tipaldi's inconsistent positions

concerning the funds that were transferred to Tower Creek, Tipaldi 'explains' that

he does not assert that the Kauai sale proceeds were used in the New Mexico

acquisition, but he understands that Lull received money from him in the fall of

2005 and forwarded the money for Tower Creek's acquisition of the New Mexico

property.

U.S. Bankruptcy Court - Hawaii   #08-90001   Dkt # 59   Filed  08/22/08   Page 10 of 26

Tipaldi does not identify any possible source of the forwarded funds besides the Kauai property sale. Nor does he offer any bank records or an LLC operating agreement in support of his factual assertions.

Tipaldi's only documentary evidence is a settlement statement dated April 25, 2005, from the Kauai property sale and a letter dated August 4, 2005, from the seller of the New Mexico property congratulating Tipaldi on the purchase of the property and requesting documents to assist in closing the transaction. The exhibits do not provide a basis to conclude that Tipaldi was the source of the funds that Tower Creek used to purchase the New Mexico property.

The settlement statement shows that Tipaldi received $310,646.92 from the closing of the Kauai property sale but it does not say what he did with the proceeds.

The August 4 letter asks Tipaldi to provide "the 1031 Name and phone #", suggesting the New Mexico acquisition was part of an Internal Revenue Code § 1031 exchange. There is no indication in the letter, however, that the property to be exchanged was Tipaldi's. The fact that Tipaldi – the registered agent of Tower Creek – was the addressee is of little evidentiary value. The letter, at most, establishes that Tipaldi played an active role in the New Mexico acquisition. It does not establish, or even strongly suggest, that Tipaldi, and only

-11-

Tipaldi, funded the purchase.

In contrast, the Trustee has made a detailed record that the funds for the purchase came from Lull. The Trustee offers authenticated bank records showing that, on September 20, 2005, a check payable to Lull in the amount of $933,000 was drawn on an account of Kapaa 382, LLC (in which Lull had an indirect interest), and that Lull used $298,136.34 of the proceeds for a wire transfer to an account held by the escrow company that handled the New Mexico transaction. See Declarations of Brian A. Moriki and Tracie Kahooilihala and exhibits thereto, attached to the trustee's Concise Statement of Material Facts (Docket No. 27).

The Trustee also offers the declaration of the escrow company's president stating that the company received a wire transfer in the amount of $298,136.34 from Lull on September 20, 2005, and that the escrow company credited that amount to Tower Creek for the purchase of the New Mexico property. The wired sum was the exact amount due from Tower Creek after adjustments to the $312,000 sales price for unpaid county taxes and prepaid homeowners association dues. See Declaration of Welda Grider and exhibits thereto, attached to the Trustee's Concise Statement of Material Facts (Docket No. 27).

-12-

In addition, the Trustee offers records from the escrow company that handled the Kauai property sale showing that the sale proceeds were issued to Tipaldi in the form of a check in the amount of $145,000 payable, at Tipaldi's direction, to an individual not affiliated with Tower Creek, and a check in the amount of $165,646.92 payable to Tipaldi. Declaration of Michael A. Lilly and exhibits thereto, filed in support of the trustee's reply memorandum in support of the motion on June 13, 2008 (Docket No. 33).

In the face of the trustee's detailed showing, Tipaldi's nearly bare assertion that Lull acted as a mere conduit in forwarding Tipaldi's funds is insufficient to create a genuine issue of material fact as to whether Lull contributed the funds for the acquisition. The trustee has demonstrated that the funds could not have come from the proceeds of Tipaldi's Kauai property sale, and that the funds were in fact derived from a check Lull received from Kapaa 382, LLC.

Accordingly, Tipaldi's argument that Lull had no interest of any value in Tower Creek that was transferred as a result of his removal cannot be sustained. Even if the court were to adopt the view that LLC member relationships are in the nature of executory contracts, it does not follow that Lull's alleged failure to convey the Idaho property to Tower Creek eliminated his interest in the LLC,

-13-

notwithstanding his contribution for the New Mexico land purchase. In the absence of evidence that an operating agreement requires otherwise, the court must rely on the default provisions of the Uniform Limited Liability Company Act. Those provisions place the member-managers on equal standing with respect to management and distribution rights, while preserving members' rights to reimbursement for payments in the ordinary course of business or for preservation of the business, or for advances exceeding the amount of contribution the member agreed to make. Haw. Rev. Stat. § 428-403.

Lull's removal as a member and manager of Tower Creek therefore falls within the broad meaning of "transfer of an interest of the debtor in property" in § 547(b). Lull's membership interest would have constituted property of his bankruptcy estate under § 541(a) had he not been removed.

The transfer also benefitted Tipaldi, who was both a creditor of Lull and one of the two remaining members of Tower Creek. The trustee accordingly has established the first element of § 547(b).

2. Antecedent Debt  § 547(b)(2)

This element of a preference is uncontested. § 547(b)(2). Tipaldi filed a proof of claim asserting an unsecured claim in the amount of $2,750,000 pursuant to a promissory note dated December 8, 2005. On November 29, 2007,

-14-

he obtained a default judgment in an adversary proceeding (Adv. Pro. No. 07-90023) determining that Lull owed him $3,011,200 and that the debt is non-dischargeable under § 523(a)(2), (a)(4) and (a)(6).

Lull testified at his § 341 creditors' meeting that he "signed off my interest [in Tower Creek] because I owed Mr. Tipaldi some money . . . ." Tr. of January 9, 2007, meeting of creditors, Exhibit "K" to the trustee's Concise Statement of Material Facts (Docket No. 27).

### 3.  Transfer Made While the Debtor Was Insolvent  § 547(b)(3)

Section 547(f) provides that, "For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." Tipaldi did not contest the presumption. If the transfer of Lull's interest in Tower Creek occurred within the 90 days preceding the filing of his voluntary chapter 7 petition, the insolvency requirement of § 547(b)(3) is satisfied.

Even if the removal occurred outside the presumptive period of § 547(f), however, the record establishes Lull's insolvency during the year preceding his bankruptcy. Tipaldi does not suggest that Lull's removal from Tower Creek occurred earlier than August 2006.

For individual debtors, the Bankruptcy Code defines "insolvent" as a

-15-

"financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation," exclusive of any fraudulently transferred or exempt property. 11 U.S.C. § 101(32)(A).

The trustee offers the declaration of a CPA who performed a solvency analysis of Lull using the "balance sheet" approach of § 101(32). The analyst determined that Lull was insolvent, as the statute defines that term, on December 8, 2005, April 21, 2006, and December 8, 2006, and at all times between those dates. The review found that on those dates, respectively, Lull had a negative net worth of approximately $18 million, $25.2 million, and $24.4 million. Declaration of Thomas T. Ueno, CPA, dated May 2, 2008, and Attachment "A" attached thereto, attached to the trustee's Concise Statement of Material Facts (Docket No. 27).

Tipaldi offers no evidence disputing the evidence of Lull's insolvency at all relevant periods. The trustee therefore has met the insolvency requirement of § 547(b)(3).

4. Transfer Within 90 Days of Filing of the Petition  § 547(b)(4)(A)

Tipaldi argues that there is a genuine issue of material fact as to whether Lull's removal occurred within 90 days of the bankruptcy petition date – that is, no earlier than September 9, 2006. If the effective date of Lull's removal

-16-

from Tower Creek was August 21, 2006, when the DCCA received (but subsequently rejected) the Tower Creek annual report noting the removal, then a transfer effected by the removal would have occurred outside the 90-day preference period of § 547(b)(4)(A). If the removal was effective on October 17, 2006, when the DCCA received and accepted the re-submitted annual report for filing, then the requirement of § 547(b)(4)(A) would be satisfied.

The question of whether Lull's removal was effective on August 21 or October 17 is purely one of law, and thus is appropriate for summary judgment. Haw. Rev. Stat. § 428-206(c), governing records authorized to be filed under the Uniform Limited Liability Company Act, provides that, "a record accepted for filing is effective at the time of filing on the date it is filed, as evidenced by the director's date and time endorsement on the original record." The plain meaning of the statute is that acceptance of the record for filing is a necessary precondition to the record's becoming effective. The annual report received by the DCCA on August 21 was not accepted for filing and was, instead, rejected and returned to Tipaldi. The report re-submitted on October 17 was accepted, making October 17, 2006, the effective date of the report as a matter of law.

U.S. Bankruptcy Court - Hawaii   #08-90001   Dkt # 59   Filed  08/22/08   Page 17 of 26

### 5. One Year Preference Period for Insiders  § 547(b)(4)(B)

Even if the effective date of Lull's removal was August 21, 2006, and thus outside the 90-day preference period, § 547(b)(4)(B) establishes a one-year preference period for transfers made to or for the benefit of an insider. "The one-year preference period is designed to deter insiders from influencing an insolvent debtor to distribute its remaining assets in a manner that benefits the insider to the detriment of non-insider creditors." Official Unsecured Creditors Committee of Sufolla, Inc. v. U.S. National Bank of Oregon (In re Sufolla, Inc.), 2 F.3d 977, 979 (9th Cir. 1993).

Section 101(31) provides that "[t]he term 'insider' includes (A) if the debtor is an individual – (i) relative of the debtor or of a general partner of the debtor; (ii) partnership in which the debtor is a general partner; (iii) general partner of the debtor; or (iv) corporation of which the debtor is a director, officer, or person in control[.]"  Under § 101(31)(E), the term "insider" also includes an "affiliate, or insider of an affiliate as if such affiliate were the debtor[.]"

The definition of "insider" under § 101(31) is not exhaustive.  Miller Avenue Professional and Promotional Servs., Inc. v. Brady (In re Enter. Acquisition Partners, Inc.), 319 B.R. 626 (B.A.P. 9th Cir. 2004); 11 U.S.C. § 102(3)("'includes' and 'including' are not limiting").  Accordingly, there are two

-18-

distinct types of insiders: "*per se*" insiders specifically mentioned in the statute, and "those not listed in the statutory definition, but who have a sufficiently close relationship with the debtor that . . . conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." Enterprise Acquisition, 319 B.R. at 631 (citing In re Anderson, 165 B.R. 482, 485 (Bankr. D. Or. 1994))(internal quotations omitted).

The latter type of insider status may be found where a professional or business relationship with the debtor "compels the conclusion" that the relationship "is close enough [for the non-debtor] to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties." Enterprise Acquisition, 319 B.R. at 631. When the transferee falls within one of the statutory examples of insiders, however, the court does not need to examine the nature of the relationship between the transferee and the debtor. "The *per se* insider is considered to be close enough to the debtor to demand preferential treatment as a matter of law, regardless of whether the insider has any actual control over the actions of the debtor." Id.

a. *Per se* or Statutory Insiders

The examples of an insider of an individual debtor in § 101(31)(A) are limited to a relative of the debtor or of a general partner of the debtor; a

partnership in which the debtor is a general partner; a general partner of the

debtor; and a corporation of which the debtor is a director, officer, or person in

control.  The list plainly does not include a limited liability company of which the

debtor is a member or manager.  Nor does it include a member of a limited liability

company in which the debtor also is a member.

      The Trustee argues that the court can nevertheless find that Tipaldi is

a *per se* insider of Lull because § 101(31)(E) further defines "insider" to include

an "affiliate, or insider of an affiliate as if such affiliate were the debtor[.]"

"Affiliate," in turn, includes a "corporation 20 percent or more of whose

outstanding voting securities are directly or indirectly owned, controlled, or held

with power to vote, by the debtor . . . ."  11 U.S.C. § 101(2)(B).

      Under Haw. Rev. Stat. § 428-404(a)(1), as the three member-

managers of Tower Creek, Lull, Tipaldi and Jasper had equal rights in the

management and conduct of the company's business unless an operating

agreement provided otherwise (and there is no evidence that such an agreement

provided otherwise).  Thus, if an LLC is sufficiently analogous to a corporation

under the Code, Tower Creek is an "affiliate" of Lull because Lull controlled or

held 33 1/3  percent of the "voting securities" of the LLC.  By the trustee's

reasoning, Tipaldi is an "insider" of Tower Creek – and thus an insider of an

-20-

affiliate so as to make him an insider of the debtor under § 101(31)(E) – because he also controls more than 20 percent of Tower Creek.

Some courts have found that an LLC is sufficiently analogous to a corporation to permit a court to apply the corporate provisions of § 101(31) to an LLC.  See, e.g., Solomon v. Barman (In re Barman), 237 B.R. 342, 348-49 (Bankr. E.D. Mich. 1999), and In re CEP Holdings, LLC, 2006 WL 3422665, at *1 n. 1 (Bankr. N.D. Ohio Nov. 28, 2006).  No published decision in the Ninth Circuit adopts this view.  To the contrary, the Bankruptcy Appellate Panel observed in Enterprise Acquisition that, "Particularly in light of the conclusive presumption of preferential treatment that arises from a determination that an entity is a *per se* insider, there is no justification for expanding the definition of *per se* insider beyond what is plainly contained in the statute."  319 B.R. at 632 (examining whether a corporation solely owned by an insider of a corporate debtor is a *per se* insider under § 101(31)(B)).  The court in Elsaesser v. Cougar Crest Lodge, LLC (In re Weddle), 353 B.R. 892, 897 (Bankr. D. Idaho 2006), heeded this observation in concluding that an LLC of which the debtors were members was not a statutory insider of the debtors.

The Weddle court's holding that a limited liability company is not a *per se* insider of a debtor who is a member of the company is the more sound

-21-

result.  It is not this court's function to expand the statute's definition of a *per se* insider.

Accordingly, Tipaldi was not an insider of Lull solely by virtue of the fact that he and Lull, until Lull's removal as member-manager, had controlling interests in the same LLC.

### b.  Non-statutory insiders

A court nevertheless may find that Tipaldi is an insider of Lull if it determines that Tipaldi's business or professional relationship with Lull caused him "to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties."  <u>Enterprise Acquisition</u>, 319 B.R. at 631.  The trustee has convincingly shown that the nature of Tipaldi's business relationship with Lull was such that Tipaldi comes within this non-statutory definition of "insider."  In his adversary action against Lull, Tipaldi alleged facts which highlight a close venture relationship with Lull.  Tipaldi alleges, for example, that Lull allowed him to review loan files of customers of the mortgage company whose Kauai branch Lull headed and proposed that Tipaldi provide "bridge loans" to customers who were unable to qualify for loans with Lull's companies.  The court admitted into evidence in that case exhibits showing 33 separate loan transactions between February 2004 and January 2005 totaling

U.S. Bankruptcy Court - Hawaii   #08-90001   Dkt # 59   Filed 08/22/08   Page 22 of 26

$3,011,200. Findings of Fact and Conclusions of Law entered January 4, 2008, in Adv. Pro. No. 07-90023 (Docket No. 30), at ¶ 2.

Although Tipaldi obtained a default judgment against Lull on findings that Lull lured him to lend based on false representations, such victimization does not preclude a finding that Tipaldi is an insider of Lull. Tipaldi and Lull were two of three members of the same limited liability company, and while the LLC relationship between Tipaldi and Lull did not make Tipaldi a *per se* insider of Lull, the relationship is still an important fact in the non-statutory analysis. That relationship enabled Tipaldi, by the stroke of a pen, to effectuate a transfer of Lull's interest in Tower Creek. Lull's creditors who were not members of Tower Creek lacked that power.

The facts which created this special business relationship make Tipaldi a non-statutory insider of Lull and, accordingly, subject Tipaldi to the one-year reach-back of § 547(b)(4)(B).

It should be unnecessary to reach the question of whether or not Tipaldi is an insider, because the transfer of Lull's interest in Tower Creek took place within 90 days of Lull's chapter 7 petition. The Tower Creek transfer was on October 17, 2006, when the State of Hawaii DCCA accepted and filed the Tower Creek Tower Creek annual report. Lull's bankruptcy petition was filed on

U.S. Bankruptcy Court - Hawaii   #08-90001   Dkt # 59   Filed 08/22/08   Page 23 of 26

December 8, 2006. However, even if the transfer occurred outside of the 90 day period, it still occurred no earlier than August 21, 2006, the date that the DCCA received and rejected the report that was submitted earlier. If August 21, 2006, is the date of the transfer, Tipaldi as an insider of Lull, is subject to the one year preference period of § 546(b)(4)(B).

      6. Effect of the Transfer  § 547(b)(5)

Lull's removal from Tower Creek was a preferential transfer only if it enabled Tipaldi to receive more from Lull than he would have received in a distribution under chapter 7 if the transfer had not occurred. In the Ninth Circuit, § 547(b)(5) is satisfied where an unsecured creditor receives a payment of any amount during the preference period and the assets in the bankruptcy estate are not sufficient to provide a 100 percent distribution to creditors in a liquidation. Elliott v. Frontier Props. (In re Lewis W. Shurtleff, Inc.), 778 F.2d 1416, 1421 (9th Cir. 1995). Because the analysis charges the creditor with the value of what was transferred plus any additional amount that the creditor would be entitled to receive in a chapter 7 liquidation, any transfer "on account" to an unsecured creditor in a less-than-100 percent liquidation allows the transferee to receive a higher-than-pro rata share of the estate's assets in a liquidation.

U.S. Bankruptcy Court - Hawaii   #08-90001   Dkt # 59   Filed 08/22/08   Page 24 of 26

The liquidation evaluation is made as of the debtor's bankruptcy petition date. McCord v. Venus Foods, Inc. (In re Lan Yik Foods Corp.), 185 B.R. 103, 108 (Bankr. E.D.N.Y. 1995).

The trustee has established that the transfer effected by Lull's removal enabled Tipaldi to receive more than Tipaldi would have received in a straight liquidation. The trustee declares that, based on current information, the claims filed in the bankruptcy case exceed the estate assets by more than $30 million. He opines that there is no possibility of a 100 percent distribution to unsecured creditors in this case, even if the estate were to prevail upon and collect in full all of its claims and had no administrative costs. Declaration of Ronald K. Kotoshirodo Dated May 6, 2008, attached to the trustee's Concise Statement of Material Facts (Docket No. 27). The above-mentioned solvency analysis also found that Lull's net worth as of the petition date was negative $24.4 million.

Tipaldi has not submitted any evidence rebutting the trustee's demonstration of the impossibility of a 100 percent distribution to unsecured creditors in the underlying chapter 7 case. The Trustee therefore is entitled to summary judgment that the requirements of § 547(b)(5) have been met.

-25-

### B. Recovery from Tipaldi § 550

The part of the motion seeking to recover $298,136.34 from Tipaldi will be denied. That is the sum that Lull paid into Tower Creek for purchase of the New Mexico real property. However, the sum to be recovered by the Trustee from Tipaldi cannot be determined on the current record. There is no proof of the value of Lull's interest in Tower Creek at the time of transfer of his interest. The record also fails to demonstrate if or how to apportion the preferential transfer between Tipaldi and Jasper, the remaining members of Tower Creek.

## VII. CONCLUSION

The motion for partial summary judgment will be granted. Lull's removal from Tower Creek effected a preferential transfer under § 547(b) as to Tipaldi. The court reserves for later determination the value of the preferential transfer and the appropriate means of its recovery by the estate. The part of the motion for partial summary judgment seeking to recover $298,136.34 from Tipaldi will be denied.

Dated: Honolulu, Hawaii, _____ AUG 2 2 2008 _____.

Lloyd King
United States Bankruptcy Judge

-26-